EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the matter of the search of:<br>**INFORMATION ASSOCIATED WITH HUNTINGANDFISHING39@GMAIL.COM, BOBSCRAPER8@GMAIL.COM, CROWUBOAT18@GMAIL.COM, ANDROID ID 8e51b7e250c47fbc, ADVERTISING ID 45f26289-9149-410a-9dd3-3519776ec6a8, AND OTHER ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE** | Case No.  21-MJ-403-SPS |

## APPLICATION FOR SEARCH WARRANT

I, Special Agent Christopher Worshek, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **NORTHERN** District of **CALIFORNIA** *(identify the person or describe property to be searched and give its location)*:

> **SEE ATTACHMENT "A":** This court has authority to issue this warrant under Title 18, United States Code, Sections 2703 and 2711(3)(A).

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

> **SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section(s) 1111(a), 1151, and 1153, and the application is based on these facts:

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*[signature]*
Christopher Worshek
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed.

Date: October 22, 2021

*[signature]*
Judge's signature

City and state: Muskogee, Oklahoma

UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

EDOK - Search Warrant (Revised 5/13)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH HUNTINGANDFISHING39@GMAIL.COM, BOBSCRAPER8@GMAIL.COM, CROWUBOAT18@GMAIL.COM, ANDROID ID 8e51b7e250c47fbc, ADVERTISING ID 45f26289-9149-410a-9dd3-3519776ec6a8, AND OTHER ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE | Case No. 21-MJ-403-SPS |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Worshek, a Special Agent with the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain Google accounts utilized by LG cellular telephone assigned call number 918-507-2644, ("the Subject Phone"), that is stored at premises controlled by Google LLC ("Google" or "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require Google to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

1

2. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since July 9, 2017. I am currently assigned to the Oklahoma City Division, Muskogee RA of the FBI. Prior to being assigned to Muskogee, I was assigned to the FBI Violent Crime Squad of the Jackson Division. Prior to being employed as a Special Agent with the FBI, I practiced law for approximately five years. As a Special Agent with the FBI, I am a law enforcement officer of the United States as defined by Title 18, United States Code, Section 2510(7), meaning that I am empowered by law to investigate violations of Federal law, including violations of the Major Crimes Act (MCA), Title 18, United States Code, Section 1153, make arrests, and execute warrants issued under the authority of the United States. During my time as a Special Agent, I have participated in numerous criminal investigations as the primary investigator. I have also received significant training in criminal investigations.

3. The statements contained in this Affidavit are based in part on: information provided by other law enforcement and criminal justice agencies, including written reports of other law enforcement agents, witness statements, and/or court records that I have received, directly or indirectly, from other law enforcement agents; independent investigation; and my experience, training, and background as a Special Agent with the FBI. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every detail of the investigation. In addition, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part.

4. Based on the facts set forth in this affidavit, there is probable cause to believe JERRY LEE MATLOCK, JR. committed the offense of Murder in Indian Country in violation of Title 18, United States Code, Sections 1111, 1151, and 1153. There is also probable cause to search the

information described in Attachment A for evidence of the crime as further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, United States Code, Section 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." Title 18, United States Code, Section 2711(3)(A)(i).

6. The facts and circumstances alleged in this affidavit occurred within the Eastern District of Oklahoma. More specifically, 474531 East 823rd Road, Stilwell, Oklahoma is within the geographic boundaries of the Cherokee Nation Reservation, and therefore is within Indian Country. JERRY LEE MATLOCK, JR. is an enrolled member of the Cherokee Nation and has some degree of Indian blood.

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

7. Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers. Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

8. I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if a user enables wi-fi connectivity. These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network. Wi-fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general,

3

devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

9. Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

10. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

11. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every device using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

12. In addition, based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (*e.g.,* Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.,* Drive, Keep, Photos, and YouTube). Many of these services are accessible only to

users who have signed-in to their Google accounts. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (*e.g.*, example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed-in to a Google account.

13. In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

14. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

15. According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. Location History is stored on Google servers, and is associated with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

16.     Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about wi-fi access points and Bluetooth beacons within range of the mobile device.

17.     Based on my training and experience, I also know that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

18.     Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can inculpate or exculpate a Google account

holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

19. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

20. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## PROBABLE CAUSE

21. During the evening of September 14, 2021, the Adair County Sheriff's Department responded to a shooting incident at 474531 East 823 Road, Stilwell, Oklahoma. Robert "Bob" Scraper was discovered outside of his residence suffering from a fatal gunshot wound.

22. Scraper lived at the residence, along with JERRY LEE MATLOCK, JR., who has been indicted by a federal grand jury for murdering Scraper in Indian Country. MATLOCK regularly drove a dark blue Dodge Ram pickup truck bearing a Cherokee Nation license plate.

23. Before the shooting, C.S. arrived at the residence on a motorcycle. According to R.C., who was already at the residence, Scraper asked MATLOCK to move MATLOCK's truck so that C.S. could park in the driveway to put air in a tire. MATLOCK got into his truck and left. According to C.S., MATLOCK was not at the home when C.S. arrived, but instead came running down the road from the east. When Scraper asked MATLOCK what was wrong, MATLOCK stated he was getting out of here. MATLOCK then drove off in the pickup truck.

24. C.S. put air in his motorcycle tires and was backing out of the driveway when a dark colored truck with round headlights slowly pulled up around the curve of the roadway. The truck backed up to turn around and drove away slowly. C.S. heard a loud boom, which he initially thought was a tire blowing out, saw Scraper grab his chest, and heard Scraper say I think they killed me. Scraper then fell to the ground.

25. R.C., who was on the porch when C.S. started the motorcycle, heard what he thought was a backfire that sounded like a pistol being fired. R.C. saw headlights to the west of the driveway and saw the vehicle back out and head north on 4745 Road towards Highway 51.

26. According to a review of surveillance video from near the incident, at approximately 8:30:54 p.m., what appears to be a pickup truck leaves the general area of Scraper's

residence. At approximately 8:43:41 p.m, what appears to be a pickup truck drives toward the general area of Scraper's residence. At approximately 8:44:02 p.m., the video records a sound consistent with one gunshot. At approximately 8:44:30 p.m., what appears to be a pickup truck leaves the general area of Scraper's residence.

27. After the Adair County Sheriff's office responded to the scene, MATLOCK was seen walking down the road toward the residence.

28. MATLOCK told Adair County deputies and others near the residence that he "wrecked his truck." MATLOCK also told an Adair County deputy to pull out the deputy's firearm and kill MATLOCK "[b]ecause all the death I've caused tonight would have been for no reason." Later, MATLOCK stated the following while talking to himself: "Larry is gone now and Bob is gone. Bob is evil." Scraper often went by "Bob."

29. MATLOCK's truck was found at a church parking lot approximately one-half mile from the residence. The buttstock of a firearm was in plain view in the backseat area. The vehicle was secured, transported to the Adair County Sheriff's office, and searched pursuant to a search warrant. A Remington model 700 rifle (bolt action) with a Nikon scope was recovered.

30. On September 20, 2021, the Subject Phone was seized pursuant to a federal search warrant executed on MATLOCK's Dodge Ram pickup truck. The Subject Phone is an Android cellular telephone associated with telephone number 918-507-2644. MATLOCK identified that telephone number as his number. Open source records indicate Verizon is the current service provider for the stated cellular number. Location and other data requested from Google for the time period specified in Attachment B are likely to constitute evidence related to the aforementioned crime.

31. The following Google accounts, as described in Attachment A, were specifically

9

identified on the Subject Phone during execution of a subsequent search warrant on the Subject Phone:

- huntingandfishing39@gmail.com
- bobscraper8@gmail.com
- crowuboat18@gmail.com
- Android ID "8e51b7e250c47fbc" and
- Advertising ID "45f26289-9149-410a-9dd3-3519776ec6a8".

## AUTHORIZATION REQUEST

32. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Title 18, United States Code, Section 2703 and Federal Rule of Criminal Procedure 41.

33. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Christopher Worshek, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ____October 22____, 2021.

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF OKLAHOMA

10

## ATTACHMENT A

### Property to Be Searched

This warrant applies to **subscriber, location information, and other information** (as set forth in Attachment B) related to the following Google accounts, all of which are stored at premises controlled by Google LLC ("Google" or "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043, for the **time period of September 14, 2021 from 0500 – 2100 CST**:

- Any and all Google account(s), Google IDs, Google Advertising IDs, and Customer IDs associated with phone number 918-507-2644
- huntingandfishing39@gmail.com
- bobscraper8@gmail.com
- crowuboat18@gmail.com
- Android ID: 8e51b7e250c47fbc
- Google / Android Advertising ID: 45f26289-9149-410a-9dd3-3519776ec6a8

Each of these accounts is individually referred to as the "Account" in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by Google**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, including any information that has been deleted but is still available to Google or that has been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account(s) listed in Attachment A for the **time period of September 14, 2021 from 0500 – 2100 CST**:

a. Location history data for all identified Accounts, to include deleted information, derived from Global Positioning System (GPS) data, cell site/cell tower triangulation precision measurement information such as timing advance or per call measurement data, Wi-Fi location information, and Bluetooth location information. Such data shall include the GPS coordinates, the dates and times of all location recordings, the origin of how the location recordings were obtained, and the estimated radius (in CSV and JSON format);

b. Subscriber/registration information to include name, emails, phone numbers, addresses, account creation dates, account status, registration IP address, means and source of payment (including any credit or bank account numbers);

c. Identifiers of associated devices (IMEI/MEID, serial number, SIM operator, cell operator, and model number, etc.), account identifiers, Android ID, Push Tokens and/or Device Tokens, Advertising IDs, AAIDs, IDFAs, etc. associated with the Account(s);

d. All IP Address logs for all services utilized by the Account(s), to include records of session times and durations, login/logout/intra-communication IP addresses associated with session times and date, methods of connecting, and log files;

e. All Gmail address(es) and Google IDs associated with the identified Account(s) including any secondary or backup email addresses associated with the Accounts;

f. Web search history, including, but not limited to, mobile and desktop browser searches;

      g. Downloaded, installed, and/or purchased apps along with activity/registration information;

      h. Google Map locations that are saved and/or frequent locations, favorite and/or starred locations including, but not limited to, searches conducted using the Google Map and/or Maze services and location history for the specified date; and

      i. Additional accounts linked by cookies.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of a violation of Title 18, United States Code, Sections 1111(a), 1151, and 1153 (Murder in Indian Country).

This warrant authorizes a review of electronically stored information, communications, and other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.